IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JON ALTON CURTIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:17-cv-78-TFM |
| ) | [wo] |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

Following administrative denial of his application for Disability Insurance Benefits and Supplemental Security Income benefits under Title XVI of the Social Security Act, Jon Alton Curtis ("Curtis" or "Plaintiff") received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Judicial review proceeds pursuant to 42 U.S.C. § 405(g), 42 U.S.C. § 1383(c)(3), and 28 U.S.C. § 636(c), and for reasons herein explained, the Court concludes the Commissioner's decision denying disability insurance benefits and supplemental security income benefits is **AFFIRMED**.

### I. NATURE OF THE CASE

Curtiss requests judicial review of the decision by the Commissioner of the Social Security Administration to deny his application for disability insurance benefits and supplemental security income benefits. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405 (2006). The court may affirm, reverse and

remand with instructions, or reverse and render a judgment. *Id.*

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is narrowly circumscribed. The court reviews a social security case solely to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Winschel*, 631 F.3d at 1178 (stating the court should not re-weigh the evidence). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999); *see also Kosloff v. Comm'r of Soc. Sec.*, 581 F. App'x 811, 811 (11th Cir. 2015) (citing *Kelley*).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Winschel*, 631 F.3d at 1178 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *see also*

*Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("even if the evidence preponderates *against* the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (citation omitted). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted). There is no presumption that the Secretary's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III. STATUTORY AND REGULATORY FRAMEWORK [1]

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[2] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to

---

[1] For the purposes of this appeal, the Court utilizes the versions effective until March 27, 2017 as that was the version in effect at the time the claim was filed. *See* 20 C.F.R. Part 404 and 416, effective March 27, 2017; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q. 3.

[2] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

assure that their income does not fall below the poverty line.[3] Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner utilizes a five-step, burden-shifting analysis to determine when claimants are disabled. 20 C.F.R. §§ 404.1520;[4] *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); *O'Neal v. Comm'r of Soc. Sec.*, 614 F. App'x 456, 458 (11th Cir. June 10, 2015). The ALJ determines:

---

[3] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[4] For the purposes of this appeal, the Court utilizes the versions effective until March 27, 2017 as that was the version in effect at the time the claim was filed. *See* 20 C.F.R. Part 404 and 416, effective March 27, 2017; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q. 3.

(1) Whether the claimant is currently engaged in substantial gainful activity;

(2) Whether the claimant has a severe impairment or combination of impairments;

(3) Whether the impairment meets or exceeds one of the impairments in the listings;

(4) Whether the claimant can perform past relevant work; and

(5) Whether the claimant can perform other work in the national economy.

*Winschel*, 631 F.3d at 1178; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). When a claimant is found disabled – or not – at an early step, the remaining steps are not considered. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). This procedure is a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The burden of proof rests on the claimant through Step 4. *See Ostborg v. Comm'r of Soc. Sec.*, 610 F. App'x 907, 915 (11th Cir. 2015); *Phillips*, 357 F.3d at 1237-39. A *prima facie* case of qualifying disability exists when a claimant carries the Step 1 through Step 4 burden. Only at the fifth step does the burden shift to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4). RFC is what the claimant is still able to do despite the impairments, is based on all relevant medical and other evidence, and can contain both exertional and nonexertional limitations. *Phillips*, 357 F.3d at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if

there are jobs available in the national economy the claimant can perform. *Id*. at 1239. In order to do this, the ALJ can either use the Medical Vocational Guidelines[5] ("grids") or call a vocational expert. *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. *Id*. at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. Otherwise, the ALJ may use a vocational expert. *Id.* A vocational expert is an expert on the kinds of jobs an individual can perform based on her capacity and impairments. *Id.* In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

## IV. BACKGROUND AND PROCEEDINGS

Curtis claims disability from Diabetes, Heart Problems, Lungs and Degenerative Disc Disease. R. 169. After initial administrative denial of his claim, Curtis sought a hearing before an administrative law judge ("ALJ"). R. 91-92. ALJ Claire R. Strong ("the ALJ") convened an in-person hearing on May 27, 2015. R. 1-24. Curtis was represented by an attorney at the hearing. The ALJ received direct testimony from Curtis and a vocational expert. The remaining evidentiary record consisted of medical reports from treating sources. The ALJ rendered an unfavorable verdict on February 3, 2016. R. 36-49. On January 13, 2017, the Appeals Council denied Curtis' request for review. This Social Security Appeal was filed on February 10, 2017. *See* Doc. 1, Complaint.

---

[5] *See* 20 C.F.R. pt. 404 subpt. P, app. 2

## V. ADMINISTRATIVE DECISION

Employing the five-step process, the ALJ found that Curtis has not engaged in substantial gainful activity since the alleged onset date (Step 1); has severe impairments (Step 2);[6] the impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth in the listings (Step 3); and Curtis can perform his past relevant work (Step 4). R. 47-49. As such, Curtis did not make his *prima facie* case for disability and the burden thus did not shift to the Commissioner to show there are a significant number of jobs in the national economy which he can perform.

At Step Four, the ALJ found Curtis had the RFC to perform the full range of medium work. R. 42. Specifically, after evaluating the entire record, the ALJ determined

> [t]he claimant is capable of performing past relevant work as a tractor trailer truck driver (DOT #904.383-010, light, semiskilled, SVP 4); bus driver (DOT # 913.463-010, medium, semi-skilled, SVP 40; sander (DOT# 761.684-0334, light, unskilled, SVP 2); forklift operator (DOT # 921.683-050, Medium, Semi-skilled, SVP3). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

R. 47.

The ALJ also reviewed the evidence as if she had determined that Curtis could not perform past relevant work. R. 48. Therefore, the ALJ moved to Step Five to determine whether Curtis can perform other jobs in the national economy and determined there are jobs that exist in significant numbers in the national economy that Curtis can perform. R. 48. The ALJ utilized the Medical-Vocational Rules and a Vocational Expert who gave the ALJ a completed Vocational Interrogatory who opined therein that there are jobs existing in the national economy which Curtis could perform. The VE provided several examples of jobs which Curtis could

---

[6] The ALJ found the following "severe" combination of impairments: diabetes milletus, type 2 with neuropathy; and Hepatitis A. R. 41.

perform such as all past relevant work except construction worker I; hand packager, industrial cleaner, and assembler, motor vehicle. Consequently, the ALJ found Curtis has not been disabled since the alleged onset date. R. 49.

## VI. ISSUES

Curtis raises two issues on appeal: 1. The ALJ's Finding of Mr. Curtis's Residual Functional Capacity is not based on Substantial Evidence. 2. The new evidence submitted to the appeals Council Warrants Remand. *See* Doc. 12, Pl. Br. at 1.[7]

## VII. DISCUSSION AND ANALYSIS

1. The RFC finding is supported by Substantial Evidence

In the case at hand, there were no reviewing or consultative examinations by a physician. In a nutshell, the medical record before the ALJ consists of various notes by physicians who treated Curtis for illnesses and/or injuries. Curtis cites various medical records which the ALJ does not directly address as grounds to show the RFC findings by the ALJ are deficient.

The regulations give preference to the opinion of the treating physicians. 20 C.F.R. § 404.1527(d)(1)-(2); *Winschel*, 631 F.3d at 1179 ("Absent good cause, an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight.") (internal citations and quotations omitted). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight . . . ." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). However, "the ALJ has the discretion to weigh objective

---

[7] While the Court does examine the entire record for obvious legal error and a general substantial evidence review, these are the sole issues raised on appeal. Therefore, the Court will direct its focus to those issues. *See United States v. Valladares*, 544 F.3d 1257, 1267 (11th Cir. 2008) (issues not challenged on appeal are deemed abandoned); *Marek v. Singletary*, 62 F.3d 1295, 1298 no. 2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned."); *Callahan v. Barnhart*, 186 F. Supp.2d 1219, 1230 (M.D. Fla. 2002) (citations omitted) (stating same); *George v. Astrue*, Civ. Act. No. 1:11-cv-2558, 2012 U.S. Dist. LEXIS 122644, *4, 2012 WL 3903069 *1(N.D. Ala. Aug. 29, 2012) (citations omitted) (stating same).

medical evidence and may choose to reject the opinion of a treating physician while accepting the opinion of a consulting physician...[but] if he follows that course of action, he must show 'good cause' for his decision." *Gholston v. Barnhart*, 347 F.Supp.2d 1108, 1114 (M.D. Ala. 2003); *see also Phillips*, 357 F.3d at 1240 (quoting *Lewis,* 125 F.3d at 1440) (The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary.").

"Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241). In other words, the Eleventh Circuit has found good cause for discounting a treating physician's report when the report "is not accompanied by objective medical evidence or is wholly conclusory." *Crawford v. Comm'r of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir.1991)). Additionally, there is good cause where the treating physicians' opinions are "inconsistent with their own medical records[.]" *Roth v. Astrue*, 249 F. App'x 167, 168 (11th Cir. 2007) (citing *Lewis*, 125 F.3d at 1440).

However, the ALJ must clearly articulate his reasons for disregarding the opinion of a treating physician. *Winschel*, 631 F.3d at 1179. Thus, "[w]hen the ALJ articulates specific reasons for not giving the treating physician's opinion controlling weight, and those reasons are supported by substantial evidence, there is no reversible error." *Schuhardt v. Astrue*, 303 F. App'x 757, 759 (11th Cir. 2008) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)). Further, although a physician's opinion about what a claimant can or cannot do is relevant, these opinions are not determinative because the ALJ has the responsibility of assessing

the claimant's RFC. *See* 20 C.F.R. § 404.1546(c*); see also Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive").

The ALJ found that the medically determinable impairments could be reasonably expected to cause the alleged symptoms, but the statements concerning intensity, persistence and limiting effects of the symptoms were not entirely credible. R. 46. In reviewing the RFC determination of the ALJ, the Court looks to the ALJ's analysis in conjunction with the remaining medical records and other evidentiary and testimonial support. The ALJ gave a detailed summary of Curtis' medical records and considered numerous other medical records in arriving at her RFC determination. R. 42-48, 261-686.

Against the backdrop of the foregoing rules, law and medical records, the court is able to discern the basis for the RFC determination and concludes the ALJ determination rests upon substantial evidence. Generally, Curtis' argument ignores the fact that the RFC finding here is not to be determined in piecemeal fashion but rather should reflect a considered judgment based on the entirety of the records before the ALJ. *Callahan*, 125 F. 3d at 1440 (citing 20 C.F.R. § 404.1545(a)). Notably, Curtis has the burden of proof to demonstrate his inability to perform his past relevant work. *Lucas v. Sullivan*, 918 F. 2d 1567, 1571 (11th Cir. 1990)

First, Curtis argues the RFC is deficient because of some preprinted information in the medical records generated by his ER visits to the East Alabama Medical Center (EAMC) in February, 2015 and June, 2015. Curtis first visited EAMC because he said he slipped in the tub and struck his back on the tub. R. 631. Rick Ledkins, M.D. ordered lumbar film which revealed normal lumbar alignment, vertebral height, and disc spaces. The tests did not reveal any

sublaxation or lumbar fractures. R. 636. In light of the foregoing findings, Dr. Ledkins planned to treat the symptoms with anti-inflammatories and perhaps muscle relaxers. R. 632. The genesis of the second visit to EAMC is unclear but Curtis complained of mid and low back pain. R. 698. The pertinent objective findings by Stephanie Huff, a certified nurse practitioner, revealed Curtis had full range of motion in all extremities, no tenderness mid-back but some tenderness in the lower back and left hip radiating around to the left groin area. Nurse Huff found no other appreciable tenderness and no midline tenderness in the cervical, thoracic, or lumbosacral spine area. R. 699. Nurse Huff prescribed medications to treat the pain symptoms.

The discharge papers from EAMC had preprinted instructions. One line of the preprinted instructions states, "[b]e aware of safe lifting methods and do not lift anything over 15 pounds until all the pain is gone." Curtis argues no one lifted the restriction and the restriction is incompatible with the RFC. As noted above, the ALJ may disregard a treating physician's opinion. Here, the preprinted form indicates the information on the form is not medical advice. R 627. Furthermore, the actual treatment notes with findings specific to Curtis do not contain any restrictions *vis a vis* lifting. To the extent Curtis desires the preprinted information taken into account, Curtis must also take into account the preprinted information recommends taking over the counter medications such as acetaminophen and by implication the patient should seek further treatment if the symptoms last more than a week. The obvious import of the language is that the medical condition is minor and will improve shortly.

It is clear to the court, as it was to the ALJ, that the preprinted information was not a medical assessment of Curtis or an opinion of a treatment provider which the ALJ had to directly address. The records were clearly considered by the ALJ to the extent necessary to determine that they lack appreciable weight. Moreover, conservative treatment is a factor from which an

ALJ may conclude the condition is not disabling. *See*, *Wolfe v. Chater*, 86 F. 3d 1072, 1078 (11th Cir. 1996). The two visits along with the rest of the medical record before the ALJ indicate physicians engaged in fairly conservative treatment of Curtis.

Next, Curtis objects to the ALJ discounting his credibility because of his noncompliance with smoking cessation. While the ALJ did take into consideration the fact that Curtis is a smoker, despite medical advice to the contrary, the record is clear that Curtis was noncompliant with medical advice and treatment regimes in other significant respects. The Commissioner correctly argues the ALJ should consider a claimant's continued smoking in evaluating subjective statements and determining functional limitations. *Stultz v. Comm'r of Soc. Sec*. 628 F. App'x 665, 669 (11th Cir. 2015). Other circuits go so far as to say quite aptly, ("[t]he Social Security Act did not repeal the principle of individual responsibility … If the claimant in this case chooses to drive himself to an early grave, that is his privelege—but if he is not truly disabled, he has no right to require those who pay social security taxes to help underwrite the cost of his ride."); *Sias v. Sec'y of Health and Human Servs.*, 861 F. 2d 475, 480 (6th Cir. 1988). The court agrees that the ALJ had a right and duty to take into account the fact Curtis is still a pack a day smoker. While smoking is a difficult habit to break, and Curtis is to be commended for reducing his smoking from 2 to 1 pack a day, it is obvious from the record before the ALJ, total abstinence from smoking would positively improve Curtis' overall health, especially his COPD.

Next, Curtis argues the ALJ erred in not imposing environmental limitations in light of his COPD. In this regard, Curtis relies upon his application to the Department of Motor Vehicles for a handicapped parking placard. The application is signed by J.W. Matthews, M.D. who checked marked the boxes of the preprinted application which state (1) cannot walk two hundred feet

without stopping to rest; or (2) cannot walk without the use of, or assistance from a brace, cane, crutch, another person, prosthetic device, wheelchair, or other assistive device. Further, Dr. Matthews checked a box which states, "Long-term Disability." R. 733.

In this respect Curtis fails to take into account that there are no medical tests or examinations which were before the Commissioner or the court to discern the basis for Dr. Matthews to check the boxes and sign the form. Dr. Matthews might have concluded that parking near various locations might be convenient for Curtis given his admittedly less than stellar health and he had to check one of the boxes if Curtis were to receive a parking pass. Most likely, Dr. Matthews relied upon Curtis' self-serving assertions that he met the qualifications to receive a handicapped parking placard. The court concludes, as did the Commissioner via the Appeals Council, the rest of the medical records generated by Dr. Matthews and other providers are not congruent with the limitations checked in the placard application. To the extent Dr. Matthews expressed an opinion regarding Curtis's condition in the placard application, the Commissioner may and did properly disregard the opinion as inconsistent with the other medical evidence.

Finally, Curtis argues the ALJ erred in his RFC findings by not imposing exertional limitations upon Curtis. Curtis cites as evidence for exertional limits his testimony about his exertional limitations, such as EAMC records which show he is ambulatory with a cane, his neuropathy, and his history of falls. The ALJ correctly noted that no treatment provider prescribed a cane for Curtis. Further the ALJ adequately stated why he discounted Curtis's credibility regarding the effects of his conditions. In fact, the evidence related to falls, the need for a cane and the effects of his medical conditions chiefly rests upon the credibility of Curtis. With respect to neuropathy, Curtis by his own admission has been noncompliant with treatment. R. 46. During episodic visits to the emergency room, Curtis received insulin which in each

instance drove his blood sugar down from levels as high as unreadable to readable but above normal limits. R 46. Whether the levels could be brought within normal limits was stymied by Curtis refusal of treatment and failure to comply with treatment. The court agrees that the ALJ was thus correct in discounting Curtis' credibility in his RFC.

    2. The evidence submitted to the Appeals Council does not merit remand.

Curtis submitted 1) medical records from Mercy Medical Clinic dated June 2015, and August, 2015. R. 683-686. 2) Emergency Room records dated June 2015 through September, 2015. R. 687-730; and 3) an application for a handicapped parking placard. R. 731-734. The court finds none of the evidence submitted to the Appeals Council was weighty or persuasive to the extent it would affect the outcome of the case had the evidence been presented to the ALJ.

The Appeals Council must grant review when the ALJ findings, actions or conclusions are contrary to the weight of the evidence in light of the new and material evidence. *Ingram v. Comm'r of Soc Sec.*, 496 F. 3d 1253, 1261 (11th Cir. 2015). Material evidence is that which is new, material, and chronologically relevant. *See Washington v. Comm'r of Soc. Sec.*, 806 F. 3d 1317, 1320 (11th Cir. 2015). The June, 2015 ER record is simply not new (R. 686). The remaining records contain general complaints of pain but add nothing which the court finds persuasive to find Curtis disabled. The records generally denote self-reports of pain but they also contain findings that the pain can be addressed by medication and other positive objective findings such as a full range of motion, normal straight leg raises and mild stenosis of the neck. R-699-714. Material evidence is also that which is so relevant and probative that there is a reasonable probability it would change the administrative result. *Milana v. Bowen*, 809 F. 2d 763, 766 (11th Cir. 1987).

Ultimately, the ALJ determined "after careful consideration of the entire record, the

undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 C.F.R. § 404.1567 (c) and 416.967(c)" R. 42.  It is not for this Court to reweigh the evidence on appeal, but rather to determine whether the ALJ has articulated sufficient reasons for arriving at her RFC determination and substantial evidence supports that decision.  The Court finds the new evidence submitted to the Appeals Council lacks sufficient weight to call the findings of the ALJ into question.

Based on the above information, there was substantial evidence for the ALJ to determine Plaintiff can perform jobs that exist in significant numbers in the national economy (Step 5).  As such, the ALJ's determination that Plaintiff is not disabled within the meaning of the Social Security Act is supported by substantial evidence.

## VIII.  Conclusion

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination and denial of benefits is supported by substantial evidence and no legal error was committed.  It is, therefore, ORDERED that the decision of the Commissioner is AFFIRMED.  A separate judgment will be entered.

DONE this 29th day of June, 2018.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE